Attorney Id. #:  004811985 Case File No. C22800
DIFRANCESCO, BATEMAN, KUNZMAN,
DAVIS, LEHRER & FLAUM, P.C.
15 Mountain Boulevard
Warren, NJ 07059
908-757-7800
Attorneys for Plaintiffs Aheya Khan and Montaha Deeb

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AHEYA KHAN, MONTAHA DEEB, & ALAUR R. KHONDOKAR<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF PATERSON AND THE CITY OF PATERSON BOARD OF ADJUSTMENT<br><br>Defendants. | Civil Action No.<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Aheya Khan, residing at 285 McBride Ave, Paterson, New Jersey County of Passaic, State of New Jersey, Alaur R. Khondokar, residing at 136 Lexington Ave, Paterson, New Jersey County of Passaic, State of New Jersey, and Montaha Deeb, residing at 16 Gould Avenue, Paterson, New Jersey County of Passaic, State of New Jersey by way of Complaint against the Defendants, state as follows:

## PRELIMINARY STATEMENT

This suit is filed in order to vindicate the rights of the Plaintiffs to engage in activity protected by the First and Fourteenth Amendments of the Constitution of the United States without fear of reprisal, to secure these First and Fourteenth Amendments rights from future restraints by the Defendants, to protest discrimination based on the exercise of protected speech, national origin, race

{A0969188.1 }                                                    1

and religion, to seek economic redress for losses suffered by the Plaintiffs at the hands of the Defendants.

## JURISDICTION AND VENUE

1. This action arises under the First Amendment to the Constitution of the United States.

2. The jurisdiction of this Court over the claim arising under 42 U.S.C. § 1983 is founded on 28 U.S.C.§§ 1343(a)(3) and (a)(4). The jurisdiction of the Court over the claims arising under the First and Fourteenth Amendments is founded on 28 U.S.C. §§1331and 1343(a)(3).

3. Venue lies in the district under 28 U.S.C.A. § 1391(b).

## THE PARTIES & BACKGROUND

4. Defendant, City of Paterson is a Municipal Corporation with its principal offices located at 155 Market Street, Paterson, NJ 07505.

5. Defendant, City of Paterson Board of Adjustment is an administrative board responsible for hearing and deciding zoning appeals, with its principal offices located at 125 Ellison Street, Paterson, NJ 07505.

6. Plaintiff, Aheya Khan was appointed on July 1, 2013 as an Alternate Commissioner to the Paterson Board of Adjustment for the City of Paterson (hereinafter "BOA").

7. Khan was reappointed to the same position for another four years on July 1, 2015, his term was supposed to expire on June 30, 2019.

8. He has lived in Paterson, New Jersey since he was five years old.

9. Plaintiff, Montaha Deeb was first employed by the City of Paterson in March 2, 2002 as a provisional employee in the Department of Community Development with the title of Account Clerk.

10. Deeb obtained permanent status on September 7, 2004 in the title of Program Monitor which is her current position at the City of Paterson.

11. Deeb was appointed in 2011 as a Commissioner to the BOA.

12. Alaur Khondokar (hereinafter "Khondokar") began living in Paterson in 1990 and was first appointed to the BOA in July 2012 to a four year term.

13. Khondokar was the first Bengali to serve in a public position in the County of Paterson. Khan was second.

14. Khan, Khondokar, and Deeb are Muslim.

15. In 2015, the Muslim board members of the BOA began to experience discrimination from non Muslim board members.

16. For instance, whenever individuals bearing Islamic names such as "Mohammed or Ahmed" appeared before the board, the non-Muslim BOA members called on the three Muslim BOA members to recuse themselves due to "conflict of interest."

17. The three Muslim board members were Aheya Khan, Alaur Khondokar, and Montaha Deeb.

18. Additionally, whenever a Muslim or Bengali or Arab applicant came before the BOA Khan, Khondokar, and Deeb's actions were questioned by the other BOA members.

19. The harassment towards the Muslim BOA members intensified on July 9, 2015 at the BOA Re-Organization meeting.

20. At the BOA Re- Organization meeting Khan nominated Deeb as the chairwoman of the board; a position she held since 2011.

21. At the Re- Organization meeting Khan nominated Deeb as the chairwoman of the board; a position she held since 2011.

22. BOA member Geraldine Rayfield requested that Khan withdraw his nomination and cited articles in the paper regarding ethics on the Board and that there may be a "conflict of interest" among certain Board Members.

23. Rayfield is not Muslim, Bengali, or Arab.

24.     Rayfield stated that there was a "conflict of interest" because the board "had a person that came before us on April 23, 2015, and I'm going to say you, Commissioner Deeb, you didn't recuse yourself."

25.     Rayfield went on further accusing Commissioner Deeb that she personally knew this person, however Rayfield was mistaken because the applicant she mentioned was not a friend of Deeb's, but rather someone of Middle Eastern decent.

26.     Khan stated that Rayfield's remarks were "really offensive."

27.     Rayfield also referenced Deeb's ongoing litigation with the city and slandered her character in front of the media and other members of the public who were present.

28.     Gerald Thaxton, another non Muslim BOA commissioner even went as far as to accuse Deeb of not being a city resident.

29.     Thaxton stated "are you a resident of the City of Paterson? Yes or no?" Deeb responded "Yes." Thaxton then stated, "Your address?" Deeb replied "You want it on the record?" Thaxton said, "Yes." Deeb gave Thaxton her address, but this was not enough. Thaxton stated "You're sure it's not 45 Whitaker Ave in Woodland Park? And do your children attend school in Woodland Park? Did your daughter just attend a prom two weeks ago, or two or three weeks ago? Yes or no, are you a resident?

30.     Thaxton continued by stating " If you say you're a Paterson resident, then maybe you need to prove it or we can take it further and go to the State Department of Community Affairs on this issue."

31.     Rodriguez then began her own inappropriate investigation into Deeb's personal life and gathered "personal information."

32.     Marco A. Laracca, Esq., the Board Attorney, did not stop the BOA from discussing the "conflict of interest" or "residency" issues, rather stated "we are not going to *determine* residency or conflicts of interest," in this meeting.

33. Khan declined to withdraw the nomination despite Rayfield's repeated requests.

34. On Roll call vote for Chairperson the Board voted Thaxton as Chairperson.

35. Thaxton received five votes and Deeb received four votes to be appointed as Chairperson.

36. There was a significant divide in the Board based on ethnicity and religious identity as Khan, Khondokar, and Levine voted for Deeb and the non Muslim members voted against her.

37. Moreover, Margarita Rodriguez, the Board's Secretary, arranged for the media along with numerous supporters to attend the Re-Organization Meeting.

38. Councilman Mendez was also in attendance at the Re-Organization Meeting in July 2015, later stated to Khan that he does not like Deeb because "she was sleeping with the black guy."

39. Many of the media personnel in attendance recorded and took photographs of the proceeding.

40. Deeb submitted a letter to Ruben Gomez, Direct of Economic Development on July 14, 2015, concerning the discriminatory Re-Organization Meeting that took place on July 9, 2015.

41. Deeb expressed her complaint about Rayfield's and Thaxton's actions and words.

42. Deeb stated "The actions of these two individuals were done for the sole purpose to cause her ridicule and humiliation in front of Rodriquez supporters and the media."

43. The purpose of this letter was to request that Gomez "investigate the discriminatory conduct of these individuals."

44. Deeb outlined in her letter she "observed that these types of disparaging remarks happen only when an Arab applicant appears before the board."

45. Deeb also stated, upon each application she was accused by Rayfield of having a personal relationship with the applicants.

46. The City did nothing to investigate the complaints of discrimination.

47.    At the September 26, 2015 meeting certain BOA commissioners introduced a resolution to remove Deeb due to her absences; initially these absences were due to a medical condition. Khan opposed the motion.

48.    Deeb asked Gomez if he needed to review her medical records, but she was assured it would not be necessary and that he was fine with her absences from the meetings due to her illness.

49.    Paterson City Ordinances state that a commissioner of the BOA who misses three consecutive meetings may be subject to removal from the board.

50.    However, Thaxton was not removed from the BOA when he failed to attend meetings for several months, but Deeb's removal was requested after several absences due to an illness with proper medical documentation supporting the same. Deeb submitted a letter to the Honorable William C. McKoy City Council President on or about October 22, 2015 outlining this incident and further discussing her complaint of discrimination against the BOA Commissioners and the Board Secretary.

51.    Deeb stated in her letter to Honorable William C. McKoy City Council President;

"on numerous occasions, there have been vocal disparaging remarks made during public meetings about the circumstance surround my pending lawsuit. There were also circulated disparaging statements made to the effect that I have been engage in a personal relationship with applications of the BOA who are of Middle Eastern Decent. The Board Secretary has publically accused me of orchestrating her removal as Board Secretary. The Board Secretary refused to reassign my seat during the board meeting, after receiving directive from Ruben Gomez. Instead, she began yelling and screaming in a public setting that I was very difficult to deal with. Chairwoman Thaxton and Board Secretary informed me that Mr. Gomez had no authority over the BOA. The Board Secretary's final statement was that she would not be seating me in third chair because she claimed that I would be spying on her."

52.    On numerous occasions the BOA commissioners made vocal disparaging remarks during public meetings about the circumstances surrounding Deeb's prior pending lawsuit.

53.    Deeb signed a Settlement Agreement and Release on February 29, 2016 releasing the City of Paterson from a lawsuit based on the New Jersey Law Against Discrimination N.J.S.A. 10:5-1, et seq., and 42 U.S.C. §1983.

54. This Settlement Agreement released the City of Paterson from "any conduct which has occurred up until and through the date of this Agreement."

55. After, the Settlement Agreement was executed and before first payment was supposed to be made to Deeb the Defendants' made her submit to a Patriot Act Search. The City has not requested a Patriot Act Search from other litigants.

56. Deeb also stated in her letter that there were disparaging statements circulating in regard to her engaging in a personal relationship with applicants of the BOA who are of Middle Eastern descent.

57. The Board Secretary, Rodriquez publically accused Deeb of orchestrating her removal as Board secretary.

58. However, a few months earlier on July 9, 2015 Deeb, Khan, and Khondokar voted "yes" to keep Rodriquez as the Board Secretary.

59. The BOA does not take part in any training in regard to preventing an "unprofessional environment."

60. However, the Board continued its unprofessional, disrespectful, and racist ways despite complaints to the City.

61. Deeb, Khan, and Khondokar followed the process of informing his/her superiors, legal counsel, and Municipal Council about the incidents as referenced in the following documented letter to individuals in supervisory positions.

62. On October 13, 2015 Khan wrote a letter to Marco A. Laracca Esq., Counsel to the Board expressing the "unfair treatment of applicants to this Commission who are of Middle Eastern decent. In addition, Chairman Thaxton, Commissioner Rayfield, and Margarita Rodriguez, Board Secretary, have recently disrespected Commissioners who are Muslim."

63.    Khan copied Ruben Gomez and the Honorable William McKoy, Council President on this letter.

64.    The letter also stated that as a result of "unacceptable behavior of appointed officials to the City of Paterson, Commissioners Deeb, Khan, and Khondokar will not be participating in further Commission meetings until the Paterson Municipal Council resolves this matter."

65.    BOA counsel sent a letter to the City Council on Board of Adjustment letterhead stating that the Board of Adjustment voted to remove Deeb.

66.    Rayfield always questioned the motives of the Muslim applicants when coming before the BOA, but not the motives of any other applicant of another race or religion.

67.    Many times the racial remarks were made off the record and not noted down by Rodriguez.

68.    On or about October 27, 2015 there was an application to operate a poultry slaughter house and retail store of poultry products certified as Halal.

69.    Rayfield stated "Why do they have to be different?"

70.    The merit of the application was soon not the focus as it turned into a debate about certain Muslim religious practices.

71.    Rayfield accused Khan of testifying for the applicant and that Khan had a "conflict" based on the applicants' Islamic name, but did not make the same accusation if another commissioner explains a point.

72.    Every time that Khan or Deeb disagreed with the board, they were considered to have "motives" by other commissioners.

73.    On Tuesday February 2, 2016, after eight months passed with no action, Khan attended a City Council Meeting to publically inquire as to the failure of the council to investigate the claims of discrimination against the BOA.

{A0969188.1 }                                              8

74.    On or about February 3, 2016 Paterson's City Council Members called for a hearing to resolve disputes among BOA members regarding discrimination.

75.    Aheya Khan, Alaur Kohndokar, and Montaha Deeb boycotted the BOA meetings for four months prior to the City Council's February 3, 2016 decision to finally investigate their claims, after being subjected to racial remarks and anti Muslim comments by the other BOA commissioners.

76.    Due to the harassment and the hostility at the BOA Thaxton, Rayfield, and Rodriguez's actions caused significant delays that affected pending developing projects.

77.    In March 2016, the City Council Members again held hearings in an attempt to resolve the racism and hostilities between the BOA members.

78.    Khan was the first to testify and he was questioned as to why he has been absent from the board and not questioned in regard to his many complaints of racial discrimination against himself and his fellow Board Members.

79.    Khan stated that "innuendos, allegations, and prejudice directed at the Muslim board members discouraged him from attending the meetings."

80.    Kenneth Morris classified Khan's absences from the BOA as a "civil disobedience" again making no reference to Khan's complaints.

81.    Khan acknowledged his absences but also said he believed "a greater wrong has been done on the board."

82.    At the hearing Councilperson Davila questioned why Khondukar was not present. When Khan explained that because of the recent death of his mother Khondokar was not supposed to participate in any public function for a period of forty (40) days in accord of Muslim practice, she began to criticize the Muslim faith and said that "in her religion we continue to work." The Council never scheduled another hearing date to investigate Khondokar's claims.

83.    Khan, Deeb, and Khondokar have been subjected to discriminatory treatment from the Board's Secretary Rodriquez on many occasions.

84.    On March 24, 2016 Deeb wrote another letter to the Paterson City Council Members and the Board of Adjustment stating "when applicants come before the Board, some of the Board members focus on the applicant's personal characteristics and background, rather than the merit and the substance of the project request before the Board.

85.    Deeb stated that some members ask the applicants "How many children they have? And Why so many?"

86.    Rodriquez publicly accused Deeb of having an improper relationship with a married Muslim applicant.

87.    Rodriquez started this rumor and it was repeated by Rayfield who stated that Deeb should have never been allowed to attend, review, or vote on the applicant's project.

88.    When Deeb first became aware of this malicious lie she contacted Ruben Gomez and two other municipal directors (James Ten Hoeve and Barbara McLlennon) to tell them what Rodriquez said.

89.    Upon further investigation of this accusation Deeb found out that Rodriquez called the applicant at his home at 1:00am and asked him if he was having a romantic relationship with Deeb.

90.    Gomez and the municipal directors advised Deeb to confront Rodriquez about her comments and told Deeb to ask Rodriquez to stop any further disparaging remarks.

91.    Deeb asked Rodriquez, Gomez, and McLennon to meet her in her office to discuss the situation.

92.    Deeb tried to engage Rodriquez in a discussion to resolve whatever hostility Rodriquez had against Deeb.

93.    Rodriquez refused to discuss the problem.

{A0969188.1 }                                      10

94. Deeb made reference to Rodriquez calling the applicant at 1:00am and asking if they were in a relationship.

95. Rodriquez became aggressive and defensive and left the meeting.

96. After the meeting, Rodriquez was very angry and began yelling down the hallway at Deeb.

97. Gomez and McLennon witnessed Rodriquez' behavior and "blow up" even though Deeb was trying to handle this issue internally and discretely.

98. This was the only step toward resolution of this problem that was made by Deeb's superiors.

99. Deeb was also accused of having a personal relationship with the applicants by Rayfield when an Arab applicant appears before the BOA.

100. Khan confronted Rodriquez about her treatment of Deeb and she responded: "that you are all the same."

101. On another occasion Deeb attempted to move her seat away from Rayfield, in an effort to avoid the animosity displayed by Rayfield toward Deeb.

102. Rodriquez would not accept Deeb seat change because it would be next to her, so she rearranged the seating.

103. Rodriquez refused to reassign Deeb's seat during the board meetings even after receiving a directive from her supervisor, Gomez.

104. Instead, Rodriquez began yelling and screaming before the public that Deeb was difficult to deal with.

105. Thaxton and Rodriquez informed Deeb that Gomez had no authority over the BOA and could not make that decision.

106. Rodriquez stated that she would not seat Deeb in the third chair because she claimed that Deeb would "spy on her."

107. Khan again confronted Rodriquez about her treatment of Deeb in regard to the seating situation she stated "it is not up to you to decide where Monty (Deeb) sits."

108. After the May 2016 City Council election the BOA passed resolution to remove the Muslim Board Members.

109. On or about July 5, 2016 Rayfield and Khondokar were not re-appointed to the Board of Adjustment.

110. Rayfield was replaced by community activist Roger Grier while Khondokar was replaced by Jersey City Police Officer Ehab Abdelaziz.

111. The removal of Rayfield did not resolve the controversy as by September 20, 2016 the council voted to remove all Muslim Board of Adjustment commissioners instead of continuing the investigation of the discrimination claims made by the Muslim BOA commissioners.

112. The City Council never completed its investigation and retaliated against them for complaining about discrimination.

113. Khondokar was the first Bengali to hold any public office in Paterson, which was a great source of pride for the Bengali community. Khan was the second Bengali appointed to a public position in Paterson. Both individuals are respected leaders in their community and have suffered as they are unable to explain to their community why they lost their positions and why after having been part of the fabric of the City for more than 70 years, the first opportunity for Bengali community leaders to serve on a public body ended because they spoke out against discrimination.

114. As a result of the actions of the BOA and City Council, Khan has been pushed out of Paterson and now resides in Newark.

115. Khan was questioned regarding his actions on the BOA by many people who came into his Sporting Goods store in Paterson.

116. Khan has suffered from emotional distress from embarrassment, humiliation and harassment and lost his hair.

117. Khan has many friends and family in Paterson who acknowledge that his reputation became tarnished all because he spoke out about Muslim discrimination at the BOA.

118. Many applicants before the Board of Adjustment voiced their displeasure and concern of discrimination based on religion, national origin, and race to the City of Paterson.

119. Khan was unable to freely express or associate with his Islamic culture and religion as he was afraid the harassment would escalate.

120. Khondokar has suffered emotional distress, humiliation, and embarrassment feeling he let down his community. He can offer no reason for the problems he encountered on from the BOA commissioners to those who look up to him and were so pleased and proud of his appointment to the BOA and had hope of being included as valuable members of the City.

121. Deeb has suffered emotional stress through her humiliation of being accused of having relationships with married applicants and the continuous discriminatory comments about her religion.

122. Deeb was subject to ridicule due to members of the BOA spreading rumors about her personal life which ultimately affected her familial relationships and friendships.

123. Deeb's reputation suffered from the disclosure of false statements and accusations.

124. Deeb was unable to freely express or associate with her Islamic culture and religion as she was afraid of the continued harassment.

125. Initially, Khan was appointed for two years in 2013 and in 2015 was appointed by the City Council for another four years, the City Council terminated his appointment prior to the expiration

of his term in retaliation for his objection to the racism and discrimination in treatment of Deeb by the BOA and its secretary, expressed by the BOA.

126. Deeb and Khan discovered they were removed from the BOA even though their terms did not expire by reading about it in the newspaper. Deeb's term initially was discontinued, but she was told she was off the BOA. The City Council appointed someone to fill her vacancy in July 2017.

127. Deeb, Khondokar, and Khan were compensated $75 per meeting and $150 for a special meeting. That compensation ended in May, 2016.

128. Deeb, Khondokar, and Khan were never notified by City Council about continuing the investigation of their discrimination complaint, yet the City Council removed them by passing a resolution in September, 2016.

## FIRST COUNT

## NEW JERSEY LAW AGAINST DISCRIMINATION BASED ON RELIGION

129. The Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 128 as if fully set forth at length herein.

130. There has been discrimination directed to the Muslim BOA members and applicants by the BOA.

131. Whenever individuals bearing Islamic names such as "Mohammed or Ahmed" appear before the board other non-Muslim members call on the three Muslim board members to recuse themselves due to "conflict of interest."

132. Deeb has observed that these types of disparaging remarks happen only when an Arab or Muslim applicant appears before the board.

133. Despite complaints to supervisors, BOA Counsel, other board members, and the City, no action was taken to stop the racist comments.

134. The BOA continued its unprofessional, disrespectful, and racist ways despite complaints to authority.

135. On October 13, 2015 Khan wrote a letter to Marco A. Laracca Esq., Counsel to the BOA expressing the "unfair treatment of applicants to this Commission who are of Middle Eastern descent."

136. Deeb told City of Directors Gomez, James Ten Hoeve, and Barbara McLlennon that the disparaging remarks towards her arose when an Arab applicant appears before the board; this is when she is accused of having a personal relationship with the applicants by Rayfield.

137. Rayfield accused Khan of testifying for the applicant and that Khan had a "conflict" based on the applicants' Islamic name "Anmar Poultry Farm, LLC."

138. The Plaintiffs complained to the City about discrimination against themselves and against applicants to the BOA.

139. Approximately eight months after the Plaintiffs' initial complaint, on or about March 24, 2016, the City Council Members began to hold some hearings allegedly in an attempt to resolve the discrimination directed to the Muslim members of the BOA and Muslim and/or Arab applicants.

140. Without completing the investigation of discrimination, in September 2016 the BOA passed a resolution to remove the Muslim Board Members.

141. The foregoing actions of defendants were based upon Plaintiffs' religion in violation of the New Jersey Law Against Discrimination (hereinafter "NJLAD") N.J.S.A. 10-5-1 et seq.

142. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered loss of income, emotional distress with physical manifestations, humiliation, and embarrassment.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages, attorney fees, interest, cost of suit, and such other and further relief as the Court deems equitable and just.

{A0969188.1 }                                                15

## SECOND COUNT

## NEW JERSEY LAW AGAINST DISCRIMINATION BASED ON ETHNICITY

143.    The Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 142 as if fully set forth at length herein.

144.    The conduct of Defendants constitutes actionable discrimination in violation of the NJLAD, N.J.S.A. 10:5-1, et seq.

145.    Whenever individuals bearing Islamic names such as "Mohammed or Ahmed" appear before the board other members call on the board members who are either Bengali or Arab to recuse themselves due to "conflict of interest."

146.    The board members asked to recuse themselves are Aheya Khan, Alaur Kohndokar, and Montaha Deeb.

147.    Whenever a Bengali or Arab applicant comes before the BOA Khan, Khondokar, and Deeb's actions are questioned.

148.    On or about February 3, 2016 Paterson City Council called for a hearing to resolve the complaints regarding discrimination and the non-Muslim Board members demanded that the Muslim board members be removed from the BOA.

149.    This action followed Khan's complaint the council had taken no action to investigate the discrimination claims for eight months.

150.    Aheya Khan, Alaur Kohndokar, and Montaha Deeb boycotted the BOA meetings for four months prior to the February 3, 2016 hearing after being subjected to discriminatory remarks about their religion, their race and the discrimination against applicants who were Muslim and/or Arab and because the City would not investigate the discrimination.

151.    The harassment towards the Bengali or Arab BOA commissioners intensified in July of 2015 at the Re-Organization meeting.

152.    The innuendos, allegations, and prejudice directed at the Bengali or Arab board members and applicants discouraged Khan from attending the meetings as it was a hostile environment.

153.    The removal of Rayfield did not resolve the controversy as by September 2016 the council voted to remove all Muslim BOA members instead of continuing the investigation on the basis of discrimination.

154.    After the May 2016 City Council election the BOA passed resolution to remove the Muslim, Bengali or Arab Board Members.

155.    Khan, Khondokar, and Deeb have many friends and family in Paterson and their reputation has been tarnished as a result of the retaliation they suffered after speaking out against discrimination.

156.    Khan, Khondokar, and Deeb are unable to freely express or associate with their Islamic culture and religion as they are afraid of the continued harassment and public ridicule.

157.    The foregoing actions of defendants were based upon Plaintiffs' ethnicity in violation of the New Jersey Law Against Discrimination ("NJLAD) N.J.S.A. 10-5-1 et seq.

158.    As a direct and proximate result of Defendants' negligent actions in violation of the NJLAD, Plaintiffs have suffered emotional distress, humiliation, embarrassment, bodily injury, coupled with physical manifestation of emotional distress, loss of income and benefits and other severe financial losses.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages, attorney fees, interest, costs of suit, and such other and further relief as the Court deems equitable and just.

## THIRD COUNT

### Violations of the New Jersey Law Against Discrimination: Hostile Work Environment
### (N.J.S.A. 10:5-1)

159.   The Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 158 as if fully set forth at length herein.

160.   Defendants engaged in activities in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et. seq., including actions that were severe or pervasive enough to make a reasonable person believe that the conditions of employment were altered and the working environment was hostile or abusive.

161.   The innuendos, allegations, and prejudice directed at the Muslim board members and applicants discouraged Khan, Khondokar, and Deeb from attending the meetings as it was a hostile environment.

162.   The removal of Rayfield did not resolve the controversy as by September 2016 the council voted to remove all Muslim BOA members instead of continuing the investigation on the basis of discrimination.

163.   Plaintiffs considered the actions of the Board of Adjustment to be severe or pervasive enough to make a reasonable person think twice before reporting any workplace issues based upon his fear of retaliation.

164.   As a direct and proximate result of the actions of Defendant, Plaintiffs suffered retaliatory harassment in violation of the New Jersey Law Against Discrimination, N.J.S.A 10:5-1, et seq.

165.   As a direct and proximate result of Defendants' actions, Plaintiffs have suffered

damages including severe emotional distress, humiliation, embarrassment, bodily injury, coupled with physical manifestation of emotional distress, loss of income and benefits, and other severe financial losses.

WHEREFORE, Plaintiffs demands judgment against the Defendants jointly and severally for compensatory damages, non-economic compensatory damages, punitive damages, attorney's fees, interest, costs of suit, equitable back pay, equitable front pay, equitable reinstatement and such other and further relief as the Court deems equitable and just.

## FOURTH COUNT

### 42 U.S.C. 1983 DEPRIVATION OF FREEDOM OF ASSOCIATION

166.    The Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 165 as if fully set forth at length herein.

167.    Deeb, Khondokar, and Khan are unable to freely express or associate with their Islamic culture and religion as they are afraid of the continued harassment and public ridicule.

168.    The conduct of the Defendants constitutes an attempt to deprive Plaintiffs of their Rights to Freedom of Association, in violation of 42 U.S.C. 1983, the First Amendment of the United States Constitution, and Article I of the New Jersey Constitution, Paragraphs 5 and 6.

169.    As a direct and proximate result of Defendants' wrongful actions, Plaintiffs have suffered emotional distress, humiliation, embarrassment, bodily injury, coupled with physical manifestation of emotional distress, loss of income and benefits and other severe financial losses.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages, attorney fees, interest, costs of suit, and such other and further relief as the Court deems equitable and just.

## FIFTH COUNT

### 42 U.S.C. 1983 DEPRIVATION OF PROCEDURAL DUE PROCESS

170.     The Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1 through 169 as if fully set forth at length herein.

171.     Khan was appointed for an initial two year term in 2013 and reappointed in 2015 for a four year term.

172.     The BOA itself voted to remove Deeb, Khan, Kohndokar, after the non-Muslim board members created a hostile work environment and then used the protest against discrimination by the Muslim board members as a basis to support the application to remove them.

173.     Deeb's seat on the BOA was not been filled, but she was told not to attend BOA meetings.

174.     Khondokar was never permitted to testify.

175.     Khan, Kohndokar, and Deeb have a property interest while holding a position with the BOA as they are compensated for regular meetings ($75) and special meetings ($150) and had an expectation of completing their term of office.

176.     Deeb and Khan were never notified of their termination by City Council and did not learn of their termination until they read it in an article after the May 2016 Re-organizational meeting.

177.     The City Council did not fill Deeb's vacancy until July 2017.

178.     The City does not enforce any policy for investigating discriminatory complaints based on religion, national origin, or race.

179.     The City did not properly investigate Deeb, Khondokar, and Khan's complaints.

{A0969188.1 }                          20

180.    The City did not give Plaintiffs a fair and impartial hearing or properly investigate their complaints.

181.    Defendants' conduct deprived Plaintiffs of their life, liberty and property interests.

182.    Defendants' conduct was objectively unreasonable under the circumstances and not rationally related to a legitimate state interest.

183.    Such conduct of all Defendants constituted a violation of Plaintiffs rights under the New Jersey Constitution as well as the United States Constitution.

184.    The City Council never completed its investigation and retaliated against them for complaining about discrimination.

185.    The conduct of the Defendants deprived Plaintiffs of their procedural due process rights, in violation of 42 U.S.C. 1983, the Fourteenth Amendment of the United States Constitution, and Article I of the New Jersey Constitution.

186.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered a deprivation of their civil rights, mental anguish, and emotional trauma.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally, for compensatory damages, punitive damages, attorney fees, interest, costs of suit, and such other and further relief as the Court deems equitable and just.

## SIXTH COUNT

## N.J.L.A.D. RETALIATION OF DEEB

187.    Plaintiffs repeat and reallege the allegations of Paragraphs 1 through 186 as though set forth at length herein.

188.    At all times pertinent hereto, the actions of the Defendants in harassing Plaintiff, Deeb, were acts of retaliation for the plaintiff engaging in protected activities and for her opposition to the harassing conduct of the defendant in violation of N.J.S.A. 10:5-1 et seq.

{A0969188.1 }                                                21

189. Deeb submitted a letter to Ruben Gomez, Direct of Economic Development on July 14, 2015, concerning the discriminatory Re-Organization Meeting that took place on July 9, 2015.

190. The harassment towards the Muslim, Bengali, and Arab BOA members intensified in July 2015 at the BOA Re-Organization meeting.

191. At the BOA Re- Organization meeting Khan nominated Deeb as the chairwoman of the board; a position she held since 2011.

192. BOA member Geraldine Rayfield requested that Khan withdraw his nomination and cited an article in the paper regarding ethics on the Board and that there may be a "conflict of interest" among certain Board Members. Rayfield is not Muslim, Bengali, or Arab.

193. Rayfield also referenced Deeb's ongoing litigation with the city and slandered her character in front of the media and other members of the public who were present.

194. Gerald Thaxton, another non Muslim, Bengali, or Arab BOA member even went as far as to accuse Deeb of not being a city resident.

195. Deeb expressed her complaint about Rayfield's and Thaxton's actions and words.

196. Deeb stated "The actions of these two individuals were done for the sole purpose to cause her ridicule and humiliation in front of Rodriquez supporters and the media."

197. The purpose of this letter was to request that Gomez "immediately investigate the discriminatory conduct of these individuals."

198. Deeb outlined in her letter she "observed that these types of disparaging remarks happen only when an Arab applicant appears before the board."

199. Deeb also stated, upon each application she was accused by Rayfield of having a personal relationship with the applicants.

200. The City did nothing to investigate the complaints of discrimination.

201.   At the September 26, 2015 meeting certain BOA members introduced a resolution to remove Deeb due to her absences; these absences were due to a medical condition. Khan opposed the motion.

202.   On or about February 3, 2016 Paterson's City Council Members called for a hearing to resolve disputes among BOA members regarding discrimination.

203.   Aheya Khan, Alaur Kohndokar, and Montaha Deeb boycotted the BOA meetings for four months prior to the City Council's February 3, 2016 decision to finally investigate their claims, after being subjected to racial remarks and anti Muslim comments by the other BOA members.

204.   On numerous occasions the BOA members made vocal disparaging remarks during public meetings about the circumstance surrounding Deeb's prior pending lawsuit.

205.   The City does not enforce any policy for investigating discriminatory complaints based on religion, national origin, or race.

206.   The City did not properly investigate Deeb, Khondokar, and Khan's complaints.

207.   The City did not give Plaintiffs a fair and impartial hearing or properly investigate their complaints.

208.   Deeb and Khan were never notified by City Council about continuing the investigation of their discrimination complaint, yet the City Council removed them by passing a resolution in May, 2016.

209.   BOA counsel sent a letter to the City Council on Board of Adjustment letterhead stating that the Board of Adjustment voted to remove Deeb.

210.   After the May 2016 City Council election the Board passed resolution to remove the Plaintiffs.

211.   The City Council never completed its investigation and retaliated against them for complaining about discrimination.

{A0969188.1 }                                           23

212. As a direct and proximate result of the defendants' actions in violation of the NJLAD, plaintiff has suffered severe emotional distress, humiliation, embarrassment, bodily injury, coupled with physical manifestation of emotional distress, loss of income and benefits and other severe financial losses.

213. WHEREFORE, Plaintiff Montaha Deeb demands judgment against Defendants jointly and severally for compensatory damages, punitive damages, attorneys' fees, interest, costs and such other and further relief as this court deems equitable and just.

## SEVENTH COUNT

## N.J.L.A.D. RETALIATION OF KHAN

214. Plaintiff's repeat and reallege the allegations of Paragraphs 1 through 213 as though set forth at length herein.

215. At all times pertinent hereto, the actions of the Defendants in harassing the Plaintiff Khan were acts of retaliation for engaging in protected activities and for his opposition to the harassing conduct of the Defendants in violation of N.J.S.A. 10:5-1 et seq.

216. At the September 26, 2015 meeting certain BOA members introduced a resolution to remove Deeb due to her absences; these absences were due to a medical condition. Khan opposed the motion.

217. On October 13, 2015 Khan wrote a letter to Marco A. Laracca Esq., Counsel to the Board expressing the "unfair treatment of applicants to this Commission who are of Middle Eastern descent."

218. The letter also stated that as a result of "unacceptable behavior of appointed officials to the City of Paterson, Commissioners Deeb, Khan, and Khondokar will not be participating in further Commission meetings until the Paterson Municipal Council resolves this matter."

219. At the BOA Re-Organization meeting Khan nominated Deeb as the chairwoman of the board; a position she held since 2011.

220. BOA member Geraldine Rayfield requested that Khan withdraw his nomination and cited an article in the paper regarding ethics on the Board and that there may be a "conflict of interest" among certain Board Members. Rayfield is not Muslim.

221. Marco A. Laracca, Esq., the Board Attorney, indicated the board was not in a position to determine any conflict of interest or issue with residency.

222. Khan declined to withdraw his nomination.

223. On Roll call vote for Chairperson the Board voted Thaxton as Chairperson.

224. Thaxton received five votes and Deeb received four votes to be appointed as Chairperson.

225. There was a significant divide in the Board based on racial and religious identity as Khan, Khondokar, and Taveras voted for Deeb and the non Muslim members voted against her.

226. On or about February 3, 2016 Paterson's City Council Members called for a hearing to resolve disputes among BOA members regarding discrimination.

227. Aheya Khan, Alaur Kohndokar, and Montaha Deeb boycotted the BOA meetings for four months prior to the City Council's February 3, 2016 decision to finally investigate their claims, after being subjected to racial remarks and anti Muslim comments by the other BOA members.

228. The City does not have any policy for investigating discriminatory complaints based on religion, national origin, or race.

229. The City did not properly investigate Deeb and Khan's complaints.

230. The City did not give Deeb and Khan a fair and impartial hearing or properly investigate their complaints.

231. Deeb and Khan were never notified by City Council about continuing the investigation of their discrimination complaint, yet the City Council removed them by passing a resolution in May, 2016.

232. After the May 2016 City Council election the Board passed resolution to remove the Muslim Board Members.

233. The City Council never completed its investigation and retaliated against them for complaining about discrimination.

234. As a direct and proximate result of the defendants' actions in violation of the NJLAD, plaintiff has suffered severe emotional distress, humiliation, embarrassment, bodily injury, coupled with physical manifestation of emotional distress, loss of income and benefits and other severe financial losses.

235. WHEREFORE, Plaintiff Montaha Deeb demands judgment against Defendants jointly and severally for compensatory damages, punitive damages, attorneys' fees, interest, costs and such other and further relief as this court deems equitable and just.

## EIGHTH COUNT

### N.J.L.A.D. RETALIATION OF KHAN, DEEB, & KHONDOKAR

236. Plaintiff's repeat and reallege the allegations of Paragraphs 1 through 235 as though set forth at length herein.

237. After the plaintiffs complained about discrimination the non-Muslim BOA commission voted to remove them from the BOA.

238. After the May 2016 City Council election the Board passed resolution to remove the Plaintiffs.

239. As a direct and proximate result of the defendants' actions in violation of the NJLAD, plaintiff has suffered severe emotional distress, humiliation, embarrassment, bodily injury, coupled

with physical manifestation of emotional distress, loss of income and benefits and other severe financial losses.

240.    WHEREFORE, Plaintiffs demand judgment against Defendants jointly and severally for compensatory damages, punitive damages, attorneys' fees, interest, costs and such other and further relief as this court deems equitable and just.

## NINTH COUNT

### 1983 RETALIATION – VIOLATION OF 1st AMENDMENT
### Right to Freedom of Speech: KHAN, KHONDOKAR, AND DEEB.

241.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 240 as if fully set forth at length At all times pertinent hereto, the actions of the Defendants in harassing the Plaintiff Khan were acts of retaliation for engaging in protected activities and for his opposition to the harassing conduct of the Defendant in violation of N.J.S.A. 10:5-1 et seq.

242.    At the September 26, 2015 meeting certain BOA members introduced a resolution to remove Deeb due to her absences; these absences were due to a medical condition. Khan opposed the motion.

243.    On October 13, 2015 Khan wrote a letter to Marco A. Laracca Esq., Counsel to the Board expressing the "unfair treatment of applicants to this Commission who are of Middle Eastern descent."

244.    The letter also stated that as a result of "unacceptable behavior of appointed officials to the City of Paterson, Commissioners Deeb, Khan, and Khondokar will not be participating in further Commission meetings until the Paterson Municipal Council resolves this matter."

245.    At the BOA Re-Organization meeting Khan nominated Deeb as the chairwoman of the board; a position she held since 2011.

246. BOA member Geraldine Rayfield requested that Khan withdraw his nomination and cited an article in the paper regarding ethics on the Board and that there may be a "conflict of interest" among certain Board Members. Rayfield is not Muslim.

247. Marco A. Laracca, Esq., the Board Attorney, indicated the board was not in a position to determine any conflict of interest or issue with residency.

248. Khan declined to withdraw his nomination.

249. On Roll call vote for Chairperson the Board voted Thaxton as Chairperson.

250. Thaxton received five votes and Deeb received four votes to be appointed as Chairperson.

251. There was a significant divide in the Board based on ethnic and religious identity as Khan, Khondokar, and Taveras voted for Deeb and the non Muslim members voted against her.

252. On or about February 3, 2016 Paterson's City Council Members called for a hearing to resolve disputes among BOA members regarding discrimination.

253. Aheya Khan, Alaur Kohndokar, and Montaha Deeb boycotted the BOA meetings for four months prior to the City Council's February 3, 2016 decision to finally investigate their claims, after being subjected to racial remarks and anti Muslim comments by the other BOA members.

254. The City does not have any policy for investigating discriminatory complaints based on religion, national origin, or race.

255. The City did not properly investigate Deeb and Khan's complaints.

256. The City did not give Deeb and Khan a fair and impartial hearing or properly investigate their complaints.

257. Deeb and Khan were never notified by City Council about continuing the investigation of their discrimination complaint, yet the City Council removed them by passing a resolution in May, 2016.

{A0969188.1 }                                    28

258.    After the May 2016 City Council election the Board passed resolution to remove the Muslim Board Members.

259.    The City Council never completed its investigation and retaliated against them for complaining about discrimination.

260.    The conduct of the Defendants deprived Plaintiff Khan of his rights to freedom of speech and was retaliatory, in violation of 42 U.S.C. 1983, the First Amendment of the United States Constitution, and Articles I, IV and VI of the New Jersey Constitution.

261.    As a direct and proximate result of Defendants' wrongful actions, Plaintiffs have suffered damages including severe emotional distress with physical manifestations, pain and suffering, humiliation, embarrassment, loss of income and benefits, loss of earning power, loss of opportunities for prospective employment, and other severe financial losses.

WHEREFORE, Plaintiffs demand judgment against the Defendants, jointly and severally,  for compensatory damages, non-economic compensatory damages, punitive damages, attorney's fees, interest, costs of suit, equitable back pay, equitable front pay, equitable reinstatement and such other and further relief as the Court deems equitable and just.

## TENTH COUNT
### DISCRIMINATION BASED ON PATRIOT ACT SEARCH
### (USA PATRIOT ACT) ACT OF 2001, PL 107–56, 115 Stat 272: DEEB

262.    Plaintiff's repeat and reallege the allegations of Paragraphs 1 through 260 as though set forth at length herein.

263.    Montaha Deeb is a citizen of the United States.

264.    Montaha Deeb is Muslim board member at the BOA.

265.    In 2015, the Muslim board members of the BOA began to experience discrimination from non Muslim board members.

266. On numerous occasions the BOA members made vocal disparaging remarks during public meetings about the circumstance surrounding Deeb's prior pending lawsuit.

267. Deeb signed a Settlement Agreement and Release on February 29, 2016 releasing the City of Paterson from a lawsuit based on the New Jersey Law Against Discrimination N.J.S.A. 10:5-1, et seq., 42 U.S.C. §1983.

268. This Settlement Agreement released the City of Paterson from "any conduct which has occurred up until and through the date of this Agreement."

269. After, the Settlement Agreement was executed; Defendants made Deeb submit to a Patriot Act Search.

270. The only Public Entitles that are required to complete a Patriot Act Search are financial institutions, Defendant is not a financial institution.

271. The supporting Executive Order, "blocks property and prohibits transactions with persons who commit, threaten to commit, or support terrorism" in any business transaction.

272. Section 312 of the Patriot Act states that; Special Due Diligence for Correspondence Accounts and Private Bank Accounts occurs when the individual is a "non- United States person, including a foreign individual visiting the United States."

273. Patriot Act Searches include members of a Terrorist Watch List and screens for any individuals who have been sanctioned from doing business with financial institutions or marinating domestic or internal bank accounts.

274. Deeb had a Patriot Act Search completed and there was nothing discovered that raised any suspicion.

275. There was no mention in the Settlement Agreement and Release that a Patriot Act Search must take place before monies were disbursed to Plaintiff Deeb.

276.    Deeb was continually harassed based on her race, religion, and national origin. The demand for the Patriot Act Compliance was done to harass Deeb and to continue to retaliate against her.

WHEREFORE, Plaintiff demands judgment against the Defendants, jointly and severally, for compensatory damages, non-economic compensatory damages, punitive damages, attorney's fees, interest, costs of suit, equitable back pay, equitable front pay, equitable reinstatement and such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs Aheya Khan, Alaur Khondokar, and Montaha Deeb, demand a trial by Jury.

## NOTICE OF DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Lisa M. Fittipaldi, Esq. as her trial counsel in this matter.

DiFRANCESCO, BATEMAN, KUNZMAN,
DAVIS, LEHRER & FLAUM, P.C.
Attorneys for Plaintiffs


LISA M. FITTIPALDI ESQ.

DATED:  July 7, 2017