**Not for Publication**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KHAN, et al., | |
| *Plaintiffs*, | Civil Action No. 17-5006 (JMV) |
| v. | **OPINION** |
| CITY OF PATERSON, et al., | |
| *Defendants*. | |

**John Michael Vazquez, U.S.D.J.**

This case arises out of alleged religious discrimination, among other things, involving members of the Paterson Board of Adjustment. Plaintiffs Aheya Khan, Montaha Deeb, and Alaur Khondokar (collectively, "Plaintiffs") allege that Defendants City of Paterson (the "City") and City of Paterson Board of Adjustment (the "Board") are responsible for the harassment and removal of Plaintiffs from the Board based on Plaintiffs' Muslim faith and respective ethnicities. Currently pending before the Court is Defendants' motion to dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.E. 6. The Court reviewed the submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b)

---

[1] Plaintiffs' Complaint will be referred to hereinafter as "Compl." (D.E. 1); Defendants' brief in support of its motion to dismiss the Complaint will be referred to hereinafter as "Defs. Br." (D.E. 6); Plaintiff's brief in opposition will be referred to hereinafter as "Pl. Opp. Br." (D.E. 10); Defendants' reply brief will be referred to hereinafter as "Defs. Reply." (D.E. 11).

and L. Civ. R. 78.1(b).  For the reasons stated below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.  FACTUAL BACKGROUND[2]

Plaintiffs are former board members of the Board.  Compl. ¶¶ 6-7, 11.  Plaintiff Khan was appointed as an Alternate Commissioner to the Board on July 1, 2013 and was subsequently reappointed to the Board on July 1, 2015.  *Id*. at ¶¶ 11-12.  Plaintiff Deeb was appointed as a Commissioner to the Board in 2011.  *Id*. ¶¶ 11-12.  Plaintiff Khondokar was appointed to the Board in 2012.  *Id*. at ¶¶ 11-12.  Plaintiffs were the only Muslims on the Board.  *Id*. at ¶¶ 14, 17.

Beginning in 2015, Plaintiffs claim that they were subjected to discrimination from non-Muslim Board members.  *Id*. at ¶ 15.  For example, when individuals with seemingly Islamic names would appear before the Board, non-Muslim Board members would request that Plaintiffs recuse themselves due to a "conflict of interest."  *Id*. at ¶ 16.  When Muslim, Bengali, or Arab applicants appeared before the Board, the other Board members would question Plaintiffs' actions vis-à-vis the applicants.  *Id*. at ¶ 18.

Plaintiffs contend that the harassment intensified on July 9, 2015 at the Board Re-Organization meeting.  *Id*. at ¶ 19.  At the Re-Organization meeting, Khan nominated Deeb to be chairwoman of the Board – a position that Deeb had held since 2011.  *Id*. at ¶¶ 20-21.  Board Member Geraldine Rayfield requested that Khan withdraw his nomination of Deeb.  *Id*. at ¶¶ 22-23. Rayfield cited articles in the paper regarding the ethics of the Board and referred to a "conflict

---

[2] The factual background is taken from the Plaintiffs' Complaint, D.E. 1.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The Court notes that the Complaint describes the facts in a somewhat non-linear, confusing, and repetitive fashion.  Accordingly, the Court reorders some factual allegations in an attempt to make more sense of Plaintiffs' allegations.

of interest" among certain Board members. *Id*. Rayfield continued that there was a conflict of interest in a current matter because Deeb knew the person appearing before the Board. *Id*. at ¶ 25. According to Plaintiffs, Rayfield was mistaken because the applicant was not Deeb's friend; rather, the person was just of Middle Eastern descent. *Id*. Gerald Thaxton, another Board member, then challenged Deeb's Paterson residency status. *Id*. at ¶¶ 28-30. The Board's attorney, Marco A. Laracca, did not stop the Board from discussing Deeb's "conflict of interest" or her residency. *Id*. at ¶ 32.

Khan did not withdraw Deeb's nomination. *Id*. at ¶ 33. Deeb received four votes, but Thaxton received five votes and was appointed Chairperson. *Id*. at ¶ 35. Also attending the meeting were Board secretary Margarita Rodriguez, Councilman Mendez, and members of the media. *Id*. at ¶¶ 37-39. Plaintiffs claim that Mendez later told Khan that he did not like Deeb because "she was sleeping with the black guy." *Id*. at ¶ 38.

On July 14, 2015, Deeb submitted a letter to Ruben Gomez, the City's Director of Economic Development, regarding the events at the Re-Organization meeting, including the actions of Rayfield and Thaxton. *Id*. at ¶¶ 40-41. In the letter, Deeb described how disparaging remarks were made only when Arab applicants appeared before the Board. *Id*. at ¶ 44. Deeb also wrote that Rayfield repeatedly accused her of having personal relationships with applicants who were before the Board. *Id*. at ¶ 45. Deeb's letter requested that Gomez investigate the discriminatory conduct. *Id*. at ¶ 43. Plaintiffs claim that the City did nothing to investigate Deeb's complaint for eight months. *Id*. at ¶¶ 46, 149.

At a Board meeting held on September 26, 2015, some Board commissioners introduced a resolution to remove Deeb based on her repeated absences from Board meetings. *Id*. at ¶ 47. Initially Deeb's absences were due to a medical condition. *Id*. Khan opposed the motion. *Id*.

Paterson City Ordinances provide for removal of a commissioner if they miss three consecutive meetings, but Plaintiffs claims that Thaxton was not removed from the Board when he missed meetings over several months. *Id.* at ¶¶ 49-50.

On October 13, 2015, Khan wrote a letter to Laracca, counsel to the Board, copying Gomez and McKoy, and described "unfair treatment of applicants to this Commission who are of Middle Eastern decent [sic]," and disrespect to Plaintiffs, based on their religion, by Thaxton, Rayfield, and Rodriguez. *Id.* at ¶¶ 62-63. The letter stated that because of "unacceptable behavior of appointed officials to the City of Paterson, Commissioners Deeb, Khan, and Khondokar will not be participating in further Commission meetings until the Paterson Municipal Council resolves this matter." *Id.* at ¶ 64.

On October 22, 2015, Deeb sent a letter to Council President William C. McKoy discussing the resolution to remove her based on absences, as well as Deeb's complaints regarding discrimination by Commissioners and the Board Secretary. *Id.* at ¶ 50. Her letter stated, in part:

> [O]n numerous occasions, there have been vocal disparaging remarks made during public meetings about the circumstances surround [sic] my pending lawsuit. There were also circulated disparaging statements made to the effect that I have been engage [sic] in a personal relationship with applications [sic] of the BOA who are of Middle Eastern Decent [sic]. The Board Secretary has publically accused me or orchestrating her removal as Board Secretary. The Board Secretary refused to reassign my seat during the board meeting, after receiving directive from Ruben Gomez. Instead, she began yelling and screaming in a public setting that I was very difficult to deal with. Chairwoman Thaxton and Board Secretary [sic] informed me that Mr. Gomez had no authority over the BOA. The Board Secretary's final statement was that she would not be seating me in third chair because she claimed that I would be spying on her.

*Id.* at ¶ 51.

4

Plaintiffs claim that on October 27, 2015, the Board considered an application to operate a poultry slaughter house and retail store of products certified as Halal. *Id.* at ¶ 68. Rayfield asked "[w]hy they have to be different?," accused Khan of testifying for the applicant, and argued that Khan had a "conflict" based on the applicants' Islamic name. *Id.* at ¶ 71.

On February 2, 2016, Khan attended a City Council meeting to publically inquire why the Council had not investigated Plaintiffs' discrimination complaints after eight months. *Id.* at ¶ 73. On February 3, 2016, the City Council members called for a hearing to resolve the disputes among the members of the Board. *Id.* at ¶ 74. In the four months preceding the Council's decision to hold a hearing, Plaintiffs had been boycotting Board meetings. *Id.* at ¶ 75.

On February 29, 2016, Deeb signed a settlement agreement (the "Settlement Agreement") with the City as to a lawsuit pursuant to the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.*, and 42 U.S.C. § 1983 ("Section 1983"). *Id.* at ¶ 53. The Settlement Agreement released the City of Paterson from "any conduct which has occurred up until and through the date of this Agreement." *Id.* at ¶ 54. Plaintiff claims that after the Settlement Agreement was executed and before the first payment to Deeb, Defendants made her submit to a "Patriot Act Search." *Id.* at ¶ 55.

In March 2016, the Council again held hearings in an attempt to resolve the disputes among Board members. *Id.* at ¶ 77. At the meeting, Plaintiffs claim that the Council focused on Plaintiffs' absences rather than Plaintiffs' complaints regarding discrimination. *Id.* at ¶ 78. At the hearing, Councilperson Davila asked why Khondokar was not present. *Id.* at ¶ 82. When Khan stated that Khondokar's mother recently died and that Muslim practice forbid Khondokar from participating in any public function for forty days, Plaintiffs allege that Davila criticized the Muslim faith and said that "in her religion we continue to work." *Id.* at ¶ 82.

On March 24, 2016, Deeb wrote a letter to members of the Council and the Board stating that "when applicants come before the Board, some of the Board members focus on the applicant's personal characteristics and background, rather than merit and the substance of the project request before the Board." *Id.* at ¶ 84. Deeb also wrote that some of the Board members ask applicants "[h]ow many children they have? And [w]hy so many?" *Id.* at ¶ 85.

At some point in time, Rodriguez accused Deeb of having an improper relationship with a married Muslim applicant. *Id.* at ¶ 86. Plaintiffs claim that Rodriguez started this rumor, and that Rayfield repeated the rumor while indicating that Deeb should not be allowed to attend, review, or vote on the applicant's project. *Id.* at ¶ 87. Deeb also found out that Rodriguez called the applicant at his home at 1:00 A.M. and asked if he was having a romantic relationship with Deeb. *Id.* at ¶ 89. Deeb contacted Gomez and two other municipal directors to tell them what Rodriguez had said, *id.* at ¶ 88, and Gomez suggested that Deeb confront Rodriguez, *id.* at ¶ 90. Deeb tried meeting with Rodriguez (along with Gomez and Barbara McLennon[3]), but Rodriguez refused to discuss the problem, became aggressive towards Deeb, and left. *Id.* at ¶¶ 91-97. Khan confronted Rodriguez about her conduct towards Deeb, and Rodriguez allegedly stated that "you are all the same." *Id.* at ¶ 100.

In May 2016, after the City Council election, the Board passed a resolution to remove Plaintiffs from the Board. *Id.* at ¶ 108. On July 5, 2016, Rayfield and Khondokar were not re-appointed to the Board. *Id.* at ¶ 109. In September 2016, the City Council voted to remove the Muslim members of the Board before their terms were up. *Id.* at ¶¶ 111, 125 (Khan's term ended

---

[3] Plaintiffs state that McLennon is a "municipal director." Compl. at ¶ 88.

in 2019), 126 (Deeb and Khan were terminated before the end of their terms).[4] Plaintiffs had been compensated $75 for regular meetings and $150 for special meetings of the Board. *Id.* at ¶ 127. This compensation ended in May 2016. *Id.* Plaintiffs claim that the City Council never completed its investigation and retaliated against Plaintiffs because they complained about the discrimination that they faced on the Board. *Id.* at ¶ 112.

Plaintiffs claim a variety of damages, including emotional stress and loss of public reputation. Plaintiffs allege that Khan has been pushed out of Paterson and his reputation has been tarnished in his community. *Id.* at ¶¶ 114-115, 117. Khan, Deeb, and Khondokar all suffer from emotional distress stemming from embarrassment, humiliation, and harassment. *Id.* at ¶¶ 116, 120-121. Khan and Deeb specifically claim that they were unable to freely express their Islamic culture and religion because of the Board's actions. *Id.* at ¶¶ 119, 124.

## II. PROCEDURAL HISTORY

On July 7, 2017, Plaintiffs filed a Complaint against the Defendants. D.E. 1. On August 28, 2017, Defendants filed this motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). D.E. 6. Plaintiffs submitted a brief in opposition, D.E. 10, to which Defendants replied, D.E. 11.

## III. LEGAL STANDARD

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially

---

[4] The exact method by which Plaintiffs were removed from the Board, and the legal relationship between the Board and the Council, are not set forth in the Complaint.

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). A court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## IV. ANALYSIS

Plaintiffs bring ten counts: violations of the New Jersey Law Against Discrimination, N.J.S.A. § 10-5-1 *et seq.*, ("NJLAD") based on Plaintiffs' religion (Count One); violations of NJLAD based on Plaintiffs' ethnicity (Count Two); violations of NJLAD based on a hostile work environment (Count Three); deprivation of Plaintiffs' First Amendment rights of expressive association pursuant to 42 U.S.C. § 1983 ("Section 1983") (Count Four); deprivation of Plaintiff's procedural due process rights pursuant to Section 1983 (Count Five); violations of NJLAD based on acts of retaliation taken against Deeb (Count Six); violations of NJLAD based on acts of retaliation taken against Khan (Count Seven); violations of NJLAD based on acts of retaliation taken against Plaintiffs (Count Eight); violations of Plaintiffs' First Amendment rights to associate

based on acts of retaliation against Plaintiffs pursuant to Section 1983 (Count Nine); and discrimination and retaliation against Deeb based on Defendants' "Patriot Act Search" (Count Ten). Compl. at ¶¶ 129-276. Defendants move to dismiss based on Deeb's Settlement Agreement, lack of a private cause of action under the Patriot Act, and failure to plausibly plead claims under Section 1983 and NJLAD.

### a. The Settlement Agreement

As an initial matter, Defendants argue that the express terms of the Settlement Agreement between Deeb and the City relieve the City from any liability as to Deeb for conduct that occurred through February 29, 2016. Defs. Br. at 6. The Court has limited information about the Settlement Agreement because neither party provided it. Instead, the Complaint briefly describes the agreement. Compl. at ¶¶ 53-55. The Complaint states that "Deeb signed a Settlement Agreement and Release on February 29, 2016 releasing the City of Paterson from a lawsuit based on the New Jersey Law Against Discrimination . . . and 42 U.S.C. § 1983." Compl. at ¶ 53. The Complaint continues that the agreement released the City from "any conduct which has occurred up until and through the date of this Agreement." *Id*. at ¶ 54. Plaintiffs admit that "Defendants' liability arises from the fact that they removed Deeb after the Settlement Agreement was executed; this forms the basis of her liability. Other allegations in the Complaint discussing Ms. Deeb prior to February 29, 2016 describe the circumstances that the other Plaintiffs Khan and Khondokar had to endure." Pl. Opp. at 7. The Court accepts Plaintiffs' admission that all factual allegations related to Deeb up to and including the date of the Settlement Agreement are not the basis for her claims. Deeb reserves the right to make an *in limine* motion before trial to determine if any of the factual allegations prior to the date of the Settlement Agreement can be otherwise used as evidence to support her current claims.

### b. Count 10 (Patriot Act)

Plaintiffs claim that after the parties reached a settlement, "Defendants made Deeb submit to a Patriot Act Search." Compl. at ¶ 269. According to Plaintiffs, nothing was discovered during the search, *id.* at ¶ 274, and the "demand for the Patriot Act Compliance was done to harass Deeb and to continue to retaliate against her," *id.* at ¶ 276. The Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act) Act of 2001 provides no private cause of action. *Ray v. First Nat. Bank of Omaha*, 413 F. App'x 427, 430 (3d Cir. 2011) (finding that "courts that have considered the question have concluded that the Patriot Act does not provide for a private right of action for its enforcement") (citing *Hanninen v. Fedoravitch*, 583 F.Supp.2d 322, 326 (D. Conn. 2008); *Med. Supply Chain, Inc. v. Neoforma, Inc.*, 419 F.Supp.2d 1316, 1330 (D. Kan. 2006)); *see also Grady v. United States Dep't of Def.*, No. 16-14293, 2017 WL 35531, at *5 (S.D. Fla. Jan. 4, 2017), *aff'd* 702 F. App'x 929 (11th Cir. 2017); *Ibn-Duriya v. Curry*, No. 306-473, 2007 WL 1191715, at *2 (W.D. Ky. Apr. 18, 2007). Accordingly, Count Ten is dismissed with prejudice.

### b. Plaintiffs' Section 1983 Claims (Counts Four, Five, and Nine)[5]

Plaintiffs bring Counts Four, Five, and Nine pursuant to Section 1983. Specifically, Count Four alleges that the "conduct of Defendants constitutes an attempt to deprive Plaintiffs of their Rights to Freedom of Association, in violation of 42 U.S.C. 1983, the First Amendment of the United States Constitution, and Article I of the New Jersey Constitution, Paragraphs 5 and 6," Compl. at ¶ 168; Count Five alleges that "Defendants deprived Plaintiffs of their procedural due

---

[5] The parties provide no analysis regarding the legal status of the Board vis-à-vis the City or the Council, nor any analysis about how this may impact Plaintiffs' claims. The parties analyze the City, Board, and Council together although the Council is not a named Defendant. Accordingly, the Court assumes for the purposes of this motion that the City, Board, and Council are part of a single municipal entity.

process rights, in violation of 42 U.S.C. 1983, the Fourteenth Amendment . . . , and Article I of the

New Jersey Constitution," *id.* at ¶ 185; and Count Nine alleges that "Defendants deprived Plaintiff

Khan of his rights to freedom of speech and was retaliatory [sic], in violation of 42 U.S.C. 1983,

the First Amendment . . ., and Articles I, IV, and VI of the New Jersey Constitution, *id.* at ¶ 260.[6]

### i. *Monell* Liability

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress[.]

Section 1983 does not provide substantive rights; rather, Section 1983 provides a vehicle for

vindicating violations of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

In order to state a claim under Section 1983, a plaintiff must demonstrate that "(1) a person

deprived him of a federal right; and (2) the person who deprived him of that right acted under color

of state or territorial law." *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J.

Apr. 14, 2015).

Plaintiffs bring their claims against the City and the Board. While a municipality may be

liable under Section 1983, it cannot be held liable under a theory of *respondeat superior*. *Monell*

*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). "A municipality may only

be held liable under § 1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the

---

[6] Plaintiffs repeatedly claim that Defendants violated the New Jersey State Constitution.
However, Plaintiffs do not identify any vehicle, such as the New Jersey Civil Rights Act, by
which they bring these claims. Accordingly, the Court dismisses without prejudice any claims
based on the New Jersey State Constitution.

'moving force' behind the injury." *Jewell v. Ridley Twp.*, 497 F. App'x 182, 185 (3d Cir. 2012)

(quoting *Monell*, 436 U.S. at 694). "In other words, the plaintiff must show that the municipality,

through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the

widespread custom, that caused the violation." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221

(D.N.J. 2015) (internal citation omitted). "A plaintiff may show the existence of a *policy* when a

decision-maker with final authority issues an official proclamation, policy, or edict. . . . [A *c]ustom*

may be established by showing that a given course of conduct, although not specifically endorsed

or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (emphases

added) (internal quotations and citations omitted).

Additionally, a plaintiff must show that the unlawful policy or custom was the proximate

cause of the plaintiff's injuries. The United States Supreme Court has observed the following as

to proximate cause:

> As our § 1983 municipal liability jurisprudence illustrates, however,
> it is not enough for a § 1983 plaintiff merely to identify conduct
> properly attributable to the municipality. The plaintiff must also
> demonstrate that, through its deliberate conduct, the municipality
> was the 'moving force' behind the injury alleged. That is, a plaintiff
> must show that the municipal action was taken with the requisite
> degree of culpability and must demonstrate a direct causal link
> between the municipal action and the deprivation of federal rights.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997); *see also Watson v.*

*Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d

Cir. 1990).

The City and the Board can only be liable under Section 1983 pursuant to a *Monell* theory

of liability. In this case, the Court finds that Plaintiffs fail to plausibly state a claim for municipal

liability because Plaintiffs fail to allege a policy or custom. Plaintiffs do not allege even a

conclusory claim of policy or custom, much less the necessary plausible facts to properly allege a

policy or custom. Accordingly, Plaintiffs' Counts Four, Five, and Nine are dismissed without prejudice. *See, e.g., Purvis v. City of Newark*, No. 16-1830, 2017 WL 1032991, at *3 (D.N.J. Mar. 16, 2017) (dismissing claim against city because plaintiff failed to plausibly plead facts demonstrating a policy or custom); *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 596 (D.N.J. 2013) (same). Nevertheless, because the Court will allow Plaintiffs to amend their Complaint, the Court will engage in a short analysis of whether each Section 1983 claim is otherwise plausibly pled.

### ii. Count Four (Expressive Association)

Count Four brings a claim for deprivations of Plaintiffs' First Amendment rights to freedom of association pursuant to Section 1983. Compl. at ¶¶ 166-169. Specifically, Plaintiffs' claim that "Deeb, Khondokar, and Khan are unable to freely express or associate with their Islamic culture and religion as they are afraid of the continued harassment and public ridicule." *Id.* at ¶ 167. The Court construes Plaintiffs' pleadings as alleging violations of the First Amendment's protection of freedom of *expressive* association.

The First Amendment provides a "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). "[T]he expressive associational right is reserved for groups that engage in some form of protected expression, and 'there is no constitutional right to associate for a purpose that is not protected by the First Amendment.'" *Coles v. Carlini*, 162 F. Supp. 3d 380, 394 (D.N.J. 2015) (quoting *Salvation Army v. Dep't of Comty. Affairs of New Jersey*, 919 F.2d 183, 199 (3d Cir. 1990)). As the Third Circuit summarized, the Supreme Court "has cast a fairly wide net in its definition of what comprises expressive activity," *Pi Lambda Phi Fraternity, Inc. v. Univ. of*

*Pittsburgh*, 229 F.3d 435, 443, however, it has also cautioned that "protected expression does not include any possible expression," *id.* at 444.

Here, the Court finds that Plaintiffs do not provide sufficient allegations that they were engaged in any expressive association. Plaintiffs' repeated allegation that "Deeb, Khondokar, and Khan are unable to freely express or associate with their Islamic culture and religion as they are afraid of the continued harassment and public ridicule," Compl. at ¶¶ 156, 167, are conclusory allegations that do not provide the neccesary basis from which the Court can draw a reasonable inference that Defendants violated Plaintiffs' First Amendment rights. *See Ashcroft*, 556 U.S. at 678 (stating that a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Accordingly, Count Four is dismissed without prejudice.

### iii. Count Five (Procedural Due Process)

Count Five brings a claim for deprivations of Plaintiffs' procedural due process rights. Compl. at ¶¶ 170-186. The Complaint appears to claim that Defendants deprived them of their property interest in their employment as Commissioners without due process when they were terminated from the Board. However, as noted by Defendants, Plaintiffs identify two additional property interests in their Opposition: (1) reputational harm in their community, and (2) the right to continued employment, Pl. Opp. at 14-16, but later clarify that they only bring their procedural due process claim based on harm to Plaintiffs' reputation. *See* Pl. Opp. at 12-16. In fact, in their opposition, Plaintiffs take an even broader position, claiming the Count Five encompasses their right to serve their community as well as their freedom of speech and association. *Id.* at 13-16.

Generally, "[t]o state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within

the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006) (citation omitted). As explained below, claims regarding the right to continued employment are claims based on a deprivation of Plaintiffs' *property* interests. Plaintiffs' reputational claims are considered "stigma-plus" claims based on a deprivation of a *liberty* interest.

### 1. Detrimental Employment Action

"It is well established that there is generally not a property interest in continued public employment unless a claimant can demonstrate a legitimate claim of entitlement to it." *Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001) (internal quotation omitted); *see also Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Hill*, 455 F.3d at 234 (quoting *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir.2005)). "Whether a person has a legitimate entitlement to—and hence a property interest in—his government job is a question answered by state law." *Hill*, 455 F.3d at 234.

Here, Plaintiffs admit in their Opposition that "Plaintiffs are not averring that their protected interest is their pay, their removal of their fixed term, or their position of Commissioner. The Plaintiffs' property interest is to be protected [sic] is their right to practice any religion they choose free from discrimination." Pl. Opp. at 13. Accordingly, Plaintiffs admit they do not bring their procedural due process claim based on their termination from the Board.

## 2. Reputational Harm

Plaintiffs assert that their procedural due process claim is based on harm to their reputations. The Third Circuit has held that, generally, "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (emphasis in original) (citing cases). Courts refer to this as the "stigma-plus" test. *See, e.g.*, *Graham v. City of Philadelphia*, 402 F.3d 139, 142 (3d Cir. 2005). The Third Circuit has explained:

> In the public employment context, the "stigma-plus" test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest. The creation and dissemination of a false and defamatory impression is the "stigma," and the termination is the "plus." When such a deprivation occurs, the employee is entitled to a name-clearing hearing.

*Hill*, 455 F.3d at 236 (internal quotations and citations omitted).

"To satisfy the 'stigma' prong of the test, it must be alleged that the purportedly stigmatizing statement(s) (1) were made publicly, and (2) were false." *Id.* (internal citations omitted). However, the Third Circuit has held that "a *public employee* who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." *Id.* at 238 (emphasis added). Yet, the "stigma" element "requires the plaintiff public employee to demonstrate that the defendant government employer created and disseminated to the public defamatory statements that were injurious to the plaintiff's reputation." *Pasqua v. Cty. of Hunterdon*, No. 14-4203, 2016 WL 4253958, at *14 (D.N.J. Aug. 11, 2016), *appeal dismissed*, No. 16-3586, 2017 WL 4117342 (3d Cir. Feb. 10, 2017), *and aff'd*, No. 16-3585, 2018 WL 343746 (3d Cir. Jan. 10, 2018).

Here, Plaintiffs have not sufficiently pled facts to raise a reasonable inference that Defendants made public and false statements, as required under the "stigma" prong. First, examining Plaintiffs' allegations in the most favorable light, Board members publically questioned whether Plaintiffs had "conflicts of interest," presumably based on knowing (or being friends with) applicants appearing before the Board or because the applicants were Muslim or of Middle Eastern descent. *See, e.g.*, Compl. at ¶ 22. At this point, while these allegations would be clearly inappropriate if true, the Court does not find that they are plausible allegations under the "stigma" element because Plaintiffs do not adequately explain how such statements are defamatory. As to the allegations regarding a purported sexual relationship between Deeb and another person, the Complaint does not plausibly allege that the statements were made in public. Instead, the Complaint make a conclusory allegation that "Rodriguez publically accused Deeb of having an improper relationship with a married Muslim applicant." Compl. at ¶ 86. Moreover, Plaintiffs fail to claim any actual reputational harm beyond the conclusory statement that "Khan has many friends and family in Paterson who acknowledge that his reputation became tarnished all because he spoke out about Muslim discrimination at the [Board]." *Id.* at ¶ 117. Lastly, as described above, Plaintiffs admit they are not bringing their due process claims related to their termination – as would be required under the "stigma-plus" test. In sum, at this point the Court finds that Plaintiffs' have not plausibly pled allegations that state a claim for any deprivations of due process.

### iv. Count Nine

The Court construes Count Nine as bringing a First Amendment retaliation claim on behalf of Khan.[7] Specifically, Plaintiffs claim that the City Council "never completed its investigation

---

[7] Plaintiffs' confusingly stylize Count Nine as bringing a claim for "1983 Retaliation – Violation of 1st Amendment Right to Freedom of Speech," while later mentioning that Plaintiffs violated N.J.S.A. 10:5-1 *et seq.*, Compl. at ¶ 241, and "42 U.S.C. § 1983, the First Amendment of the

17

and retaliated against [Plaintiffs] for complaining about discrimination." Compl. at ¶ 259.[8] Plaintiffs claim that Defendants' conduct "deprived Plaintiff Khan of his rights of freedom of speech and was retaliatory." *Id*. at ¶ 260.

To bring a First Amendment retaliation claim pursuant to Section 1983, plaintiffs "must show (1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *see Fultz v. Dunn*, 165 F.3d 215, 218 (3d Cir. 1998) (stating the test in a similar way: "A public employee alleging an adverse employment action because he engaged in protected First Amendment activity must show that (1) he engaged in protected activity, and (2) the protected activity was a substantial or motivating factor for the adverse action. . . . If the plaintiff satisfies the first two prongs, the defendant can escape liability by showing that (3) he would have taken the same action absent the protected activity."). "In order to establish the required causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Rink v. Ne. Educ. Intermediate Unit 19*, 717 F. App'x 126, 133 (3d Cir. 2017) (citing *Lauren W.*, 480 F.3d at 267).

---

United States Constitution, and Articles I, IV, and VI of the New Jersey Constitution," *id*. at ¶ 260. The Court construes Count Nine as bringing claims pursuant to Section 1983 based on violations of the First Amendment. If Plaintiffs want to bring claims based on violations of the New Jersey Constitution, Plaintiffs will need to assert the legal basis by which they are asserting such claims.

[8] It seems that Plaintiffs intend to bring Count Nine on behalf of Khan. However most of the allegations included in Count Nine refer to all Plaintiffs.

Regarding the requirement that the speech be protected, the Supreme Court has cautioned that "[w]hen a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011) (citation omitted). This is a question of law. *Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008). "If an employee does not speak as a citizen, or does not address a matter of public concern, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* (internal quotation omitted). "[W]hen public employees make statements pursuant to their official duties, the employees *are not speaking as citizens* for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) (emphasis added).

If the employee is speaking as a citizen, the Supreme Court has reviewed the "public concern" standard:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

*Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal quotations omitted); *see also Miller*, 544 F.3d at 548 ("Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community."). Importantly, matters of personal interest do not generally constitute protected speech. *Brennan v. Norton*, 350 F.3d 399, 412 (3d Cir. 2003) ("If the speech in question is purely personal, it does not fall under the protective umbrella of the First Amendment[.]"); *Feldman v. Philadelphia Housing*

*Authority*, 43 F.3d 823, 829 (3d Cir.1994) (stating that public speech cannot "constitute[] merely personal grievances"). "This does not, however, suggest that speech which is motivated by private concern can never qualify as protected speech. It clearly can if it addresses a matter that concerns the public as well as the speaker." *Brennan*, 350 F.3d at 412. Nevertheless, "even if the speech by a public employee touches on a topic of general importance, such as discrimination or harassment, that speech is a not matter of public concern if the employee complains 'only about isolated acts directed solely at them.'" *Hashem v. Hunterdon Cty.*, No. 15-8585, 2016 WL 5539590, at *19 (D.N.J. Sept. 29, 2016) (quoting *Rowan v. City of Bayonne*, 474 Fed. Appx. 875, 878 (3d Cir. 2012)). For example, in *Rowan*, the Third Circuit found that plaintiffs did not engage in protected speech because they "did not seek to expose discriminatory or harassing practices by the City; rather, they complained only about isolated acts directed solely at them." *Rowan*, 474 Fed. Appx. at 878.

Once a court determines speech is about a matter of public concern, then the court engages in a balancing of "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). For an employee to succeed, "the government must lack an adequate justification for treating the employee differently than the general public based on its needs as an employer under the *Pickering* balancing test." *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 987 (3d Cir.2014) (internal quotations omitted).

Here, Plaintiffs allege that their complaints related to anti-Muslim comments of Board members caused the retaliation against them, namely, being removed from the Board. Plaintiffs' complaints did not only concern their own status on the Board. Plaintiffs complained about

discriminatory anti-Muslim comments made by fellow Board members towards Plaintiffs and also about applicants. *See, e.g.*, Compl. at ¶¶ 84-85 (alleging that "when applicants come before the Board, some of the Board members focus on the applicant's personal characteristics and background, rather than the merit and the substance of the project request before the Board"). At this stage, Plaintiffs have plausibly pled that they spoke on a matter of public concern and were retaliated against because of that speech. Additionally, Plaintiffs have sufficiently alleged that their removal from the Board was causally linked to their complaints.[9]

Therefore, Plaintiffs' Section 1983 claims are dismissed for failing to plausibly allege a practice or custom pursuant to *Monell*. Besides the *Monell* deficiencies which infect all of the Section 1983 counts, Counts Four and Five are also not plausibly pled.

### c. Plaintiffs' NJLAD Claims

Plaintiffs bring Counts One, Two, Three, Six, Seven, and Eight under NJLAD. NJLAD provides that it is unlawful for an employer "to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment" due to the person's membership in a protected class. N.J.S.A. 10:5-12(a).[10]

---

[9] The Court finds that the *Pickering* balancing analysis is better left for the summary judgment stage. Without a full record, the Court cannot effectively engage in the necessary review.

[10] The *McDonnell Douglas* burden-shifting framework apply to some NJLAD claims at the summary judgment and trial stage when a plaintiff brings a claim based on circumstantial evidence. Specifically, the framework will apply to Plaintiff's claims of disparate treatment (Counts One and Two), *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 369 (D.N.J. 2006), and retaliatory discharge (Counts Six, Seven, and Eight). The framework provides the following steps:

> (1) the plaintiff must come forward with sufficient evidence to constitute a *prima facie* case of discrimination; (2) the defendant then must show a legitimate non-discriminatory reason for its decision; and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.

The Court notes, as an initial matter, that if Plaintiffs are unable to successfully plead their Section 1983 claims in an Amended Complaint, this Court will not have jurisdiction over Plaintiffs' NJLAD claims. *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."). The Court nevertheless will briefly address whether Plaintiffs plausibly plead their NJLAD claims.[11]

### i. Counts One and Two

Counts One and Two allege that Plaintiffs were discriminated against and removed from the Board because of their religious faith and respective ethnicities. "In order to establish a prima facie case for allegations of disparate treatment [under NJLAD], a plaintiff must establish that: (1) he belongs to a protected class; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) others not within

---

*El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 166 (App. Div. 2005) (citations omitted); *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Peper v. Princeton Univ. Bd. of Trustees*, 77 N.J. 55, 82–83 (N.J. 1978). At this stage, the Court's inquiry is limited to whether Plaintiffs plead a *prima facie* case.

[11] Defendants first argue that Plaintiffs' NJLAD claims must fail because there was no employment relationship between Defendants and Plaintiffs. Defs. Br. at 16-17; *see* Pls. Opp. at 28-30 (arguing that Plaintiffs were "employees" of the Board). At this point, Plaintiffs have provided enough at the pleading stage to make a plausible showing that they could be considered employees. *See Greenman v. City of Hackensack*, No. 15-3274, 2016 WL 831794, at *2 (D.N.J. Mar. 2, 2016) (finding that at the pleading stage, a City Council member who "did work" and "was paid" had alleged enough to survive a motion to dismiss). This argument is more appropriate for summary judgment after the parties have engaged in discovery. As a result, for the purposes of the Court's analysis in this Opinion, the Court assumes the necessary employment relationship exists.

the protected class did not suffer similar adverse employment action." *Rogers v. Alternative Res. Corp.*, 440 F. Supp. 2d 366, 371 (D.N.J. 2006) (citing *El–Sioufi*, 382 N.J. Super. at 167).[12]

Here, the Court finds that Plaintiffs have plausibly pled that they were removed from the Board based on their religious affiliation and ethnicity. The parties do not dispute that Plaintiffs were members of a protected class. Plaintiffs also allege that they were removed from the Board, when non-Muslim members of the Board remained. Therefore, the Court finds that Counts One and Two are plausibly pled.

### ii. Count Three

Count Three alleges that Defendants' actions were "severe or pervasive enough to make a reasonable person believe that the conditions of employment were altered and the working environment was hostile or abusive." Compl. at ¶ 160. "Under the NJLAD, a plaintiff states a claim for a religiously hostile work environment by showing that the complained-of conduct (1) would not have occurred but for the employee's [religion]; and it was (2) severe or pervasive enough to make a (3) reasonable [Muslim] believe that (4) the conditions of employment were altered and the working environment was hostile or abusive." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 277 (3d Cir. 2001) (citation and quotation omitted).

Here, based on Plaintiffs' allegations, a reasonable factfinder could view the evidence as showing that Plaintiffs' treatment was attributable to their Muslim faith. Plaintiffs allege that they were removed from the Board based on their religious faith and that there was no competent

---

[12] Plaintiffs may arguably be attempting to bring a claim based in discriminatory discharge under NJLAD, a claim that has slightly different elements. "In order to establish a *prima facie* case in a discriminatory discharge claim, a plaintiff must prove by a preponderance that: (1) he is a member of a protected class; (2) he performed his job in a satisfactory manner; (3) he was discharged; and (4) someone else performed his job after he left." *Rogers*, 440 F. Supp. 2d at 375 (citing *Baker v. Nat'l State Bank*, 312 N.J. Super. 268, 284 (App. Div. 1998)). Plaintiffs should clarify their claims in Counts One and Two in an Amended Complaint.

investigation into their complaints. Plaintiffs' claims are not merely based on "epithets, insults, rudeness, [or] severe personality conflicts," *Shnaidman v. State, Dep't of Human Servs., Div. of Mental Health Servs.,* No. A-4120-11T4, 2013 WL 1776098, at *9 (N.J. App. Div. Apr. 26, 2013), which fail to state a valid claim under NJLAD.

Accordingly, Count Three plausibly pleads a claim for a religiously hostile workplace under NJLAD.

### iii.  Counts Six, Seven, and Eight

Counts Six, Seven, and Eight bring NJLAD claims based on the retaliatory removal of Plaintiffs from the Board following their complaints. NJLAD makes it unlawful

> For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5-12(d). "To establish a *prima facie* case of retaliation under [NJ]LAD, [plaintiffs have] to show that 1) [they were] engaged in a protected activity known to the defendant; 2) [they were] thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two." *Romano v. Brown & Williamson Tobacco Corp.*, 284 N.J. Super. 543, 548–49 (App. Div. 1995).

Defendants argue that Plaintiffs fail to claim that there was an adverse employment action. Defs. Br. at 23-24; Defs. Reply at 15-16. However, Plaintiffs explicitly claim that they were removed from the Board based on their complaints about the harassment directed towards them. *See* Compl. at ¶¶ 210, 211, 232, 233, 237, 238. The removal allegations sufficiently allege an adverse employment action. Plaintiffs also sufficiently identify a causal link.

Accordingly, Counts Six, Seven, and Eight plausibly plead claims for retaliation pursuant to NJLAD.

## V. CONCLUSION

Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Count Ten is dismissed with prejudice. Counts Four, Five, and Nine are dismissed without prejudice. Plaintiffs have thirty (30) days to file an Amended Complaint, if they so choose, consistent with this Opinion. If Plaintiffs fail to file an Amended Complaint, the dismissal of Counts Four, Five, and Nine will be with prejudice.[13] An appropriate Order accompanies this Opinion.

Dated: May 2, 2018

John Michael Vazquez, U.S.D.J.

---

[13] As explained, if Plaintiffs are unable to successfully replead their Section 1983 claims, then this Court will not have jurisdiction over Plaintiffs' NJLAD claims.